UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

ELI BENSINGER, Individually and On Behalf
of All Others Similarly Situated,

          Plaintiff,   MEMORANDUM
                 AND ORDER
    - versus -         10-CV-1917

DENBURY RESOURCES INC.,

          Defendant.

---

A P P E A R A N C E S

  WEISS & LURIE
    551 Fifth Avenue, Suite 1600
    New York, New York 10176
  By: David Corey Katz
    Joshua M. Rubin
    Joseph Harry Weiss
    *Attorney for Plaintiff*

  BAKER & HOSTETLER LLP
    45 Rockefeller Plaza
    New York, New York 10111
  By: Jessica Morgan Gabriel
    Mark Kornfeld
    Jerry R. Linscott
    *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

  Eli Bensinger brings this putative class action against Denbury Resources Inc. ("Denbury") for federal securities law violations arising from Denbury's merger with Encore Acquisition Company ("Encore") on March 9, 2010. Bensinger now moves for class certification, for appointment as class representative, for appointment of WeissLaw LLP[1] as class

---

[1] Effective September 1, 2012, the firm representing Bensinger changed its name from Weiss & Lurie to WeissLaw LLP. *See* Notice of Change of Firm Name, Sept. 7, 2012, ECF No. 86.

counsel, and for judgment on the pleadings. For the reasons set forth herein, I grant in part and deny in part Bensinger's motions.

BACKGROUND

On October 31, 2009, Denbury and Encore entered into a merger agreement (the "Merger Agreement"). Merger Agreement, Gabriel Decl. Ex. 1, ECF No. 60 ("MA"). The Merger Agreement provided that Encore would merge with and into Denbury and that, upon the merger, Encore stockholders would receive $50 for each of their shares. Encore stockholders could elect to receive their $50 in one of three ways: (1) they could receive $50 in cash; (2) they could receive $15 in cash and $35 in Denbury stock; or (3) they could receive $50 in Denbury stock.

For those Encore stockholders who elected to receive all or part of their $50 in Denbury stock, the number of Denbury shares to which they were entitled hinged upon the value of Denbury stock. The higher the value of Denbury stock, the fewer shares they would receive for their money, and the lower the value, the more shares they would receive. For example, if Denbury shares were worth $1, an Encore shareholder who had elected to receive his $50 entirely in stock would receive 50 shares of Denbury stock. But if Denbury shares were worth $2,[2] the same Encore shareholder would receive only 25 shares. The dispute in this case is about what the value of Denbury stock was.

The Merger Agreement set the value of Denbury stock as the "volume weighted average price of [Denbury] Common Stock for the period of twenty (20) consecutive trading days ending on the second full trading day prior to the Effective Time," MA § 2.1(a)(i), and it defined the "Effective Time" to mean "the date and time" of the filing of a certificate of merger

---

[2] The value of Denbury stock was subject to a collar mechanism that would have prevented the value from dropping as low as $1 or $2. I use these figures only to simplify my illustration.

2

with the Delaware Secretary of State, MA § 1.2.  The Proxy Statement filed by Denbury with the SEC on February 8, 2010, used equivalent language except in one material aspect:  It defined the "Effective Time" or "Closing" as simply the "date" (not the date and time) that a certificate of merger is filed with the Delaware Secretary of State.  Proxy Statement 2, 101, Gabriel Decl. Ex. 3-1, ECF No. 60 ("PS").  Furthermore, several of Denbury's earlier filings with the SEC, including Denbury's January 26, 2010 amendment to its Form S-4 Registration Statement, stated that the value of Denbury stock would be set at the "volume-weighted average price of Denbury common stock . . . for the twenty-day trading period ending on the second day prior to closing."  Compl. ¶ 19; Answer ¶ 19; *accord* Compl. ¶¶ 15-17; Answer ¶¶ 15-17.  Thus these filings dropped the language in the Proxy Statement and Merger Agreement that the relevant period ended on the second *full trading* day prior to closing.

The merger was ultimately approved by shareholders and consummated, and the certificate of merger was filed with the Delaware Secretary of State on the evening of Tuesday, March 9, 2010, after the trading day ended.  Compl. ¶ 27; Answer ¶ 27.  In calculating the number of Denbury shares to be doled out to Encore stockholders, the value of Denbury stock was set as the weighted average price of Denbury common stock for the twenty-day period ending on March 8, 2010.  Bensinger contends that, pursuant to the terms of the Proxy Statement and earlier SEC filings incorporated by the Proxy Statement, the value of Denbury stock should have been set as the weighted average price of Denbury common stock for the twenty-day period ending on March 5, 2010.  The difference between the two calculations is that the former counts March 9, 2010, as a day prior to closing and the latter does not.

Bensinger alleges that he held 42,100 shares of Encore stock on the date of the merger and that he disposed of his Denbury shares (via short sales) prior to the merger.  He

3

contends that if Denbury had used the 20-day period specified in the Proxy Statement, the value of Denbury stock would have been set lower and, as a result, he would have received a larger number of Denbury shares.

Bensinger filed the initial complaint in this action on April 28, 2010, and he filed an amended complaint on May 27, 2010 (the "Complaint"). The Complaint asserts violations of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and Section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n.[3] Denbury moved to dismiss on March 15, 2011, arguing, *inter alia*, that it had not made any material misrepresentations in the Proxy Statement. I denied Denbury's motion on August 17, 2011, concluding that the Proxy Statement was misrepresentative and that the misrepresentations therein were not immaterial as a matter of law. *See* Memorandum and Order dated Aug. 17, 2011, at 14, ECF No. 33. Bensinger now moves for judgment on the pleadings. He also asks that I (1) certify a class of all Encore shareholders who received stock or a combination of stock and cash and were damaged by the failure of Denbury to calculate the merger consideration in accordance with the representations made in the Proxy Statement; (2) appoint him as class representative; and (3) appoint his counsel, WeissLaw LLP, as class counsel.

## DISCUSSION

A.   *Jurisdiction*

Denbury argues that the allegations in the Complaint demonstrate that Bensinger lacks standing to bring either of the claims he asserts. Because the absence of standing would deprive the Court of subject matter jurisdiction, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555

---

[3]   Although the Complaint also asserts a breach of contract claim, Compl. ¶¶ 49-54, Bensinger has voluntarily dismissed that claim, *see* Pl.'s Letter dated Feb. 4, 2011, ECF No. 17.

4

(1992), the Court must assure itself that Bensinger has standing before reaching the merits of Bensinger's motions, *see Herrick Co., Inc. v. SCS Commn'ns., Inc.*, 251 F.3d 315, 321 (2d Cir. 2001) ("[S]ubject matter jurisdiction remains 'an unwaivable *sine qua non* for the exercise of federal judicial power.'" (quoting *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990))). In reviewing the facial jurisdictional challenge made here – that is, the objection to the legal sufficiency of plaintiff's jurisdictional allegations as set forth in the complaint – I "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" and determine whether standing exists on those facts. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)) (internal quotation marks omitted).

  1. *Section 11 Claim*

    Denbury suggests that a § 11 suit may only be brought to recover out-of-pocket losses, *see* 15 U.S.C. § 77k(e) (authorizing suits to "recover such damages as shall represent the difference between the amount paid for the security . . . and . . . the price at which such security shall have been disposed of in the market before suit"), and that Bensinger suffered no out-of-pocket losses. Accordingly, Denbury contends that Bensinger lacks standing to bring his § 11 claim because he does not fall within the zone of interests that § 11 was designed to protect and because his injury is not redressable through a § 11 claim.

    The basic premise underlying Denbury's argument is that Bensinger ultimately profited on the merger – he disposed of his Denbury shares for more money than he spent to acquire the Encore shares from which they were converted – and thus did not suffer out-of-pocket losses. Acknowledging that Bensinger might have profited even more if Denbury conformed to its representations in the Proxy Statement, Denbury suggests that these lost profits

5

represent benefit-of-the-bargain damages, not out-of-pocket losses, and such damages do not suffice do not confer standing to bring a § 11 claim.

Even assuming *arguendo* that Denbury's argument is appropriately styled as a standing argument[5] and that only individuals with out-of-pocket losses may succeed on a § 11 claim, I conclude I have subject matter jurisdiction to entertain Bensinger's § 11 claim. Bensinger adequately alleges that he suffered out-of-pocket losses. According to the allegations of the Complaint, the Proxy Statement represented that Bensinger's Encore shares would be converted into a certain number of Denbury shares. In actuality, Bensinger received fewer than that represented number of Denbury shares in exchange for his Encore shares. Accordingly, Bensinger paid (in Encore shares) for Denbury shares that he never received. This is an out-of-pocket loss. Bensinger may bring a § 11 suit for the "difference between the amount [he] paid for [the missing Denbury shares] . . . and . . . the price at which such security shall have been disposed of," 15 U.S.C. § 77k(e), which was $0 because those shares were never given to him. In this context, where Bensinger alleges he paid for Denbury shares he never received, that Bensinger may have earned an overall profit through his short sales prior to the merger is irrelevant.

Denbury also contends that Bensinger lacks standing to bring his § 11 claim because he cannot trace the lineage of his Denbury shares. Only individuals who "'purchased a security that was originally registered under the allegedly defective registration'" have standing to bring a claim under § 11. *DeMaria v. Anderson*, 318 F.3d 170, 176 (2d Cir. 2003) (quoting

---

[5] The mere fact that a plaintiff's claim is deficient on the merits does not mean that he lacks standing to bring it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional *power* to adjudicate the case.").

*Lee v. Ernst & Young, LLP*, 294 F.3d 969, 976-77 (8th Cir. 2002); *accord Barnes v. Osofsky*, 373 F.2d 269 (1967). Accordingly, the owner of a corporation's shares who wants to challenge that corporation's registration statement must be able to trace his shares to that registration statement. *DiMaria*, 318 F.3d at 176. Here, Bensinger contends that his injury derives from the conversion of his Encore shares into Denbury shares pursuant to the merger of the two corporations. In such circumstances, it should go without saying that Bensinger has satisfied the traceability requirement, as the injury he complains of is necessarily tied to shares that were registered by the Proxy Agreement.[6]

  2. *Section 14 Claim*

Denbury argues that Bensinger may not bring his § 14(a) claim because he falls outside of the zone of interests protected by that provision as well. Specifically, Denbury claims that § 14(a) was designed to protect shareholders' voting rights and Bensinger lacked any relevant voting rights because he was ineligible to vote on the merger.[7] Bensinger does not contest either of these arguments, but suggests that § 14(a) protects another voting right that he *did* have: the right to elect whether he wanted to receive the $50 for each of his Encore shares in all cash, cash and Denbury stock, or all Denbury stock.

The "purpose of § 14(a) is to prevent management or others from obtaining authorization *for corporation action* by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) (emphasis added). Congress believed that "'[f]air *corporate suffrage* is an important right that should attach to every equity security bought on a public exchange.'" *Id.* (quoting H.R. Rep. No. 1383, 73d Cong., 2d Sess.,

---

[6]  Denbury does not contest that the Proxy Agreement was a registration statement for purposes of § 11.

[7]  It is undisputed that Bensinger could not vote on the merger because he acquired his Encore shares after the record date for the merger vote.

7

13) (emphasis added), *abrogated on other grounds by Cort v. Ash*, 422 U.S. 66, 78 (1975). Thus the "provision was intended to promote 'the free exercise of the voting rights of stockholders' by insuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'" *Werfel v. Kramarsky*, 61 F.R.D. 674, 678 (E.D.N.Y. 1974) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 381 (1970)).

The kind of voting right that that Bensinger possessed – the right to choose whether he *personally* would prefer to receive his allotment of $50 per Encore share in all cash, cash and Denbury stock, or all Denbury stock – is not the kind of voting right that Congress intended to protect through § 14(a). Rather, Congress aimed to protect *corporate suffrage* rights, that is, the right of shareholders to participate in corporate governance. *See Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1103 (1991) (holding that Congress did not intend for shareholders who lack the power to influence corporate action to bring § 14(a) actions); *Mills*, 396 U.S. at 385 (noting that underlying § 14(a) is a "congressional policy of ensuring that the shareholders are able to make an informed choice when they are consulted on corporate transactions"). Thus, although Bensinger had the right under the Merger Agreement to decide among the three options for the form of his payout for Encore stock, and although the Proxy Statement advised him of that fact, *see* PS at 2, the Proxy Statement was not soliciting a proxy with respect to this choice and none of the options constituted corporate action. The relevant corporate action for which proxies were solicited in this case was the proposed merger, and because Bensinger lacked the right to vote on the merger, he lacks standing to bring a § 14(a) claim. *See, e.g.*, *7547 Corp. v. Parker & Parsley Dev. Partners*, 38 F.3d 211, 230 (5th Cir. 1994) ("[W]e are unwilling to expand standing under section 14(a) of the Exchange Act to interest-holders who are not

8

qualified to vote."); *DCML LLC v. Danka Bus. Sys. PLC, A.D.*, No. 08 Civ. 5829, 2008 WL 5069528, at *2 (S.D.N.Y. 2008) ("It is generally accepted that only shareholders who were entitled to vote on a transaction have standing under section 14(a) to challenge the proxy materials issued by a corporation regarding that transaction."); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 241 (S.D.N.Y. 2004) ("[O]nly shareholders who owned Time Warner common stock on the record date of the Merger are permitted to bring Section 14(a) claims . . . ."); *Wulc v. Gulf & W. Indus., Inc.*, 400 F. Supp. 99, 104 (E.D. Pa. 1975) (because plaintiff lacked suffrage rights, he lacked standing to bring § 14(a) claim); *Werfel*, 61 F.R.D. at 678 (plaintiff has no private right of action to bring § 14(a) claim because he "never had any voting rights"). Accordingly, the § 14(a) claim is dismissed.

B.      *Motion for Judgment on the Pleadings*

On a motion for judgment on the pleadings, a district court determines whether, accepting as true all factual allegations in the non-moving party's pleading and drawing all reasonable inferences in the non-movant's favor, judgment must be entered as a matter of law. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). For Bensinger to be entitled to judgment in his favor on his remaining claim (*i.e.*, his § 11 claim), the misrepresentations made by Denbury must be material as a matter of law. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). In the context of a § 11 claim, a statement is material when "a reasonable investor would have considered [it] significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161-62 (2d Cir. 2000). Our inquiry is whether the misrepresentations were material at the time they were made, *Spielman v. Gen. Host Corp.*, 402 F. Supp. 190, 194 (S.D.N.Y. 1975), and we consider the misrepresentations in light of all of the available information, *see Basic v. Levinson*, 485 U.S.

224, 232 (1988) (holding that a misrepresentation is material when a reasonable investor would have viewed the omitted or misrepresented information as having altered the total mix of information available).

Thus the question I confront is how a reasonable investor would have viewed the misrepresented fact that Denbury had the discretion to choose which of two consecutive 20-day periods to use in setting the value for Denbury stock (for purposes of the payout to Encore shareholders): a period including or a period excluding the actual date of the merger, March 9, 2010. I conclude that I cannot answer this question as a matter of law. A reasonable investor would have anticipated that there might be significant fluctuation in the market value of Denbury stock on the day of the merger, which counsels in favor of a finding of materiality. However, a reasonable investor would also have recognized that taking the weighted average of the value of the stock over a 20-day period would have blunted the effect of those fluctuations, which counsels against a materiality finding. Furthermore, although a reasonable investor would have been unaware that the difference between the two 20-day periods would turn out to be as small as it was, he might have felt that such a small difference – had he believed it to be the most likely outcome – was insignificant. In short, reasonable minds could reach different answers in the materiality inquiry before me, and I thus deny Bensinger's motion for judgment on the pleadings with respect to its § 11 claim.

C.     *Motion to Certify a Class*

Denbury also moves to certify a class of all Encore shareholders who received stock or a combination of stock and cash and were damaged by the failure of Denbury to calculate the merger consideration in accordance with the representations made in the Proxy Statement. As Denbury effectively concedes, this suit easily meets the numerosity,

commonality, typicality, and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  Fed. R. Civ. Proc. 23(a)(1)-(4).  That Bensinger may be an arbitrageur and that he disposed of his Denbury shares through short sales prior to the merger is immaterial; he suffered the same kind of injury (he paid for Denbury shares he never received) because of the same conduct (Denbury's issuance of a misrepresentative Proxy Statement) as the other members of the proposed class.

This is a textbook example of the kind of case that is appropriate for a class action.  Whether the Proxy Statement was materially misrepresentative is *the* central question in *all* of the class members' claims.  Apart from the number of shares they held and whether they elected to receive a mix of cash and Denbury stock or only Denbury stock, the class members are identically situated for purposes of the remaining claim.  Accordingly, and taking into account all the factors set forth in Rule 23(b)(3)(A)-(D), I conclude that the legal and factual questions common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. Proc. 23(b)(3).

## CONCLUSION

For the reasons provided, Bensinger's § 14 claim is dismissed and his motion for judgment on the pleadings of his § 11 claim is denied.  Bensinger's motion to certify a class, to be appointed class representative, and to appoint WeissLaw LLP as class counsel is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 28, 2012
       Brooklyn, New York