# W<small>EISS</small>L<small>AW</small> LLP

16th Floor
1500 Broadway
New York, New York 10036
TEL. (212) 682-3025
FAX (212) 682-3010

New York . Los Angeles

May 2, 2013

**VIA ECF**

The Honorable John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    <u>Bensinger v. Denbury Resources, Inc.</u>
              Case No. 10-cv-01917 (JG) (VVP)

Dear Judge Gleeson:

      We are Class Counsel in the captioned action. We respectfully write to: (a) advise the Court that mediation seeking to resolve the litigation has been unsuccessful and that the Second Circuit has granted Denbury's Rule 23(f) application for leave to appeal the September 28, 2012 Order certifying the Section 11 Class and Eli Bensinger as Class Representative; and (b) to renew our request for a pre-motion conference for leave to amend the Complaint to reassert a Section 14 claim with a new plaintiff who indisputably has standing to do so; or, alternatively, to assert a new claim against Denbury for violation of Section 10(b) of the Exchange Act.[1]

      As set forth below, the application with respect to both claims is timely made, seeks to plead meritorious claims, is made in good faith, will not unduly prejudice the Defendant, is in the interest of justice, will not entail additional discovery by Plaintiff, and, particularly in light of the 23(f) appeal, will not result in delay.

      On September 28, 2012, Your Honor entered an Order: (a) granting Plaintiff's motion to certify the class as to the §11 claim, appointing Eli Bensinger Lead Plaintiff for those claims and WeissLaw LLP as Class Counsel; (b) dismissing Plaintiff's §14(a) claim because of his individual lack of standing; and (c) denying the motion for judgment on the pleadings.

---

[1] On April 3, 2012, the Court entered an Order stating: "In light of the pending motions for class certification and judgment on the pleadings, the Court finds it imprudent at this time to schedule a pre-motion conference concerning the amendment of the pleadings or the joinder of additional parties or to consider the timeliness of a request for such a conference. If necessary, plaintiff may raise these issues after decision on the pending motions."

WEISSLAW LLP

The Honorable John Gleeson
May 2, 2013
Page 2

The §14(a) claim was sustained over Defendant's motion to dismiss, is meritorious, and allows for recovery of "benefit-of-the-bargain" damages. See, e.g., Osofsky v. Zipf, 645 F.2d 107, 114 (2d Cir. 1981). It was dismissed as part of the September 28 Order only because of Plaintiff Eli Bensinger's individual lack of standing. However, it can properly be asserted by another plaintiff who indisputably has standing to do so because he owned Encore shares on the record date specified in the Proxy. Given the liberal amendment policy of Fed. R. Civ. P. 15, as well as the mandates of Rule 17, leave to amend the complaint to add/substitute a plaintiff to assert the 14(a) claim should be granted. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19-21 (2d Cir. 1997) (permitting substitution of plaintiffs and relation-back where the complaint would remain identical except for the plaintiff's name, and holding that substitution "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants"); Shaev v. Hampel, 2002 U.S. Dist. LEXIS 20497 (S.D.N.Y. Oct. 25, 2002) (allowing amendment to advance a new plaintiff for 14(a) claim after original plaintiff was found to lack standing).

Denbury will not be prejudiced by the addition of a new plaintiff, whose claim concerns the identical facts and allegations as Mr. Bensinger's and thus "relates back," pursuant to Fed. R. Civ. P. 15, to the 14(a) claim originally asserted. The 14(a) claim was always a part of this lawsuit. Pursuant to Fed. R. Civ. P. 17(a), a "reasonable time" must be allowed for the real party in interest to be substituted; "such ... substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Advanced Magnetics, 106 F.3d at 19-20 (quoting Fed. R. Civ. P. 17(a)). Plaintiff will not need further discovery as a result of adding a new plaintiff and whatever new discovery Defendant needs will be provided promptly. Here, as in Shaev, there is "no unfairness to Defendant[] in allowing substitution...., [t]herefore, the Amended Complaint may be said to relate back." 2002 U.S. Dist. LEXIS 20497, at * 11.

As to the alternative request for leave to assert a §10(b) claim, as the Court knows, this case concerns Denbury's indisputably false and misleading statements in the Registration Statement. Discovery has established that Denbury's conduct was purposeful and knowing, and at a minimum reckless. Well before the merger closing, Denbury secretly decided to file the Certificate of Merger after the close of the market on March 9, 2010, despite the express representation in the Registration Statement that such a filing would be made promptly after the 10AM shareholder votes; it intended to, and did, use provisions in the Merger Agreement that were either not disclosed or falsely described in the Registration Statement to provide itself with an undisclosed unilateral option, i.e., to begin the calculation on either February 5, 2010 or February 8, 2010, whichever would be more advantageous to Denbury and, thus, detrimental to Encore shareholders. Denbury omitted mention of this option and/or falsely described the calculation of the merger consideration in the Registration Statement, as well as numerous other public filings. Meanwhile, internally, Denbury's CEO, Phil Rykhoek, and its CFO, Mark Allen, tracked the differing amounts would be required to pay employing these different start dates.

**W**EISS**L**AW LLP

The Honorable John Gleeson
May 2, 2013
Page 3

  After numerous consultations with its counsel, at the eleventh hour before shareholders were to vote on the merger, after Encore, its investment bankers and even Denbury's own investment bankers agreed to a "final" calculation employing the February 5 - March 5, 2010 date range required by the Registration Statement, Denbury abruptly told Encore that it chose to ignore the Registration Statement and would calculate the merger consideration beginning on February 8, 2010, thereby eliminating from the calculation the $14.10 per share price of Denbury stock on February 5, 2010 and substituting it with the materially higher $15.29 per share price on March 8, 2010. Denbury was obligated to, but did not, disclose these facts. See, e.g., SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1095 (2d Cir. 1972) ("That these developments occurred after the effective date of the registration statement did not provide a license to appellants to ignore them. Post-effective developments which materially alter the picture presented in the registration statement must be brought to the attention of public investors."). These facts, along with others, collectively raise a strong inference of scienter.

  The remaining elements of the §10(b) claim will also be pled sufficiently and will not be subject to the arguments made by Denbury in opposition to the §11 damages claim. Whether characterized as out-of-pocket losses or benefit-of-the-bargain damages, the losses of the Class are recoverable under §10(b)[2] and were plainly caused by Denbury's wrongful conduct.

  Finally, the requested amendment of the pleadings is in the interest of justice, will not be prejudicial to Denbury, and will not result in delay. Plaintiff and the Class do not request to reopen discovery. Notice has not yet been sent to the Class. Moreover, Denbury's 23(f) appeal to the Second Circuit is at an early stage procedurally. Accordingly, Plaintiff and the Class respectfully request that their application be granted.

              Respectfully submitted,

              /s/ *Joseph H. Weiss*

cc: All counsel (via ECF)

---

[2] "In order to accommodate the wide variety of factual predicates to §10(b) claims, courts have utilized their discretion to endorse several different compensatory damages theories, including gross economic loss and benefit of the bargain damages." See, e.g., CAMOFI Master LDC v. Riptide Worldwide, Inc., 2012 U.S. Dist. LEXIS 178383, at * 45-46 (S.D.N.Y. Mar. 23, 2011) (internal quotation marks omitted).